

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

10-16-2008

# In Re: Amer Cap

Precedential or Non-Precedential: Non-Precedential

Docket No. 07-2546

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"In Re: Amer Cap " (2008). *2008 Decisions.* Paper 360.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/360

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 07-2546
_____

IN RE:  AMERICAN CAPITAL EQUIPMENT, LLC
AND SKINNER ENGINE CO.,

Debtors


HARTFORD ACCIDENT AND INDEMNITY COMPANY,
HARTFORD FIRE INSURANCE COMPANY,
FIRST STATE INSURANCE COMPANY,
ALLIANZ GLOBAL RISK US INSURANCE CO.,
FIREMAN'S FUND INSURANCE CO. OF OHIO,
CENTURY INDEMNITY COMPANY,
PACIFIC EMPLOYERS INSURANCE CO.,
NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA,
CONTINENTAL INSURANCE COMPANY,
CONTINENTAL CASUALTY COMPANY, AND
THE FAIRCHILD CORPORATION,

Appellants
_____

No. 07-2746
_____

IN RE:  AMERICAN CAPITAL EQUIPMENT, LLC
AND SKINNER ENGINE CO.,

Debtors


GREAT AMERICAN INSURANCE COMPANY,
as successor to Agricultural Excess & Surplus Company,

Appellant

_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Nos. 06-cv-00891, 06-cv-00892,
06-cv-00917 and 06-cv-01016)
District Judge:  Honorable Gary L. Lancaster

_____

Argued June 3, 2008
Before:  FISHER and JORDAN, *Circuit Judges*, and YOHN,[*] *District Judge*.

(Filed: October 16, 2008)

Craig Goldblatt
Seth P. Waxman (Argued)
Wilmer Hale
1875 Pennsylvania Avenue, NW
Washington, DC  20006

Timothy K. Lewis
Paul H. Titus
Schnader Harrison Segal & Lewis
120 Fifth Avenue
Fifth Avenue Place, Suite 2700
Pittsburgh, PA  15222

Robert J. Williams
Manion, McDonough & Lucas
600 Grant Street. Suite 1414
Pittsburgh, PA  15219
    *Attorneys for Appellants, Hartford Accident & Indemnity Co.,*
    *Hartford Fire Ins. Co., and First State Ins. Co.*

_____

[*]The Honorable William H. Yohn Jr., United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

Michael A. Kotula
Rivkin Radler
926 Rexcorp Plaza
Uniondale, NY  11556
*Attorney for Appellant, Allianz Global Risks*

Mark D. Plevin
Crowell & Moring
1001 Pennsylvania Avenue, N.W.
Washington, DC  20004
*Attorney for Appellants, Fireman's Fund Ins. Co. of Ohio,*
*Century Indemnity Co., and Pacific Employers Ins. Co.*

Beverly W. Manne
Michael A. Shiner
Tucker Arensberg
1500 One PPG Place
Pittsburgh, PA  15222
*Attorneys for Appellant, National Union Fire*
*Ins. Co. of Pittsburgh, PA*

David C. Christian, II
Seyfarth Shaw
131 South Dearborn Street, Suite 2400
Chicago, IL  60603

Cushing O. Condon, II
Andrew I. Mandelbaum
Ford, Marrin, Esposito, Witmeyer & Gleser
88 Pine Street
23rd Floor, Wall Street Plaza
New York, NY  10005

David K. Rudov
Rudov & Stein
100 First Avenue
First & Market Building, Suite 500
Pittsburgh, PA  15222
*Attorneys for Appellants, Continental Ins. Co.*
*and Continental Casualty Co.*

Michael S. Fettner
Cletus P. Lyman
Lyman & Ash
1612 Latimer Street
Philadelphia, PA 19103
        *Attorneys for Appellant, Fairchild Corp.*

Russell W. Roten
Duane Morris
633 West Fifth Street, Suite 4600
Los Angeles, CA 90071
        *Attorney for Appellant, Great American Ins. Co.*

Sally E. Edison (Argued)
McGuireWoods
625 Liberty Avenue
23rd Floor, Dominion Tower
Pittsburgh, PA 15222
        *Attorney for Appellees, American Capital Equipment, LLC
        and Skinner Engine Co.*

Douglas A. Campbell
Erik Sobkiewicz
Campbell & Levine
330 Grant Street
1700 Grant Building
Pittsburgh, PA 15219

Alan Kellman (Argued)
The Jaques Admiralty Law Firm
645 Griswold, Suite 1370
Detroit, MI 48226
        *Attorneys for Appellee, Willard B. Bartel*

_____

OPINION OF THE COURT
_____

FISHER, *Circuit Judge*.

Hartford Accident and Indemnity Company, Hartford Fire Insurance Company, First State Insurance Company, Allianz Global Risk US Insurance Co., Fireman's Fund Insurance Co. of Ohio, Century Indemnity Company, Pacific Employers Insurance Co., National Union Fire Insurance Company of Pittsburgh, Pa., Continental Insurance Company, Continental Casualty Company, and The Fairchild Corporation appeal the order of the District Court affirming the Bankruptcy Court's denial of their motion to dismiss Skinner Engine Company's and American Capital Equipment's Chapter 11 case for lack of good faith. For the following reasons, we will affirm.

I.

Skinner Engine Company ("Skinner") allegedly manufactured asbestos-containing engines and engine parts for ships until some time in the 1970s. During the 1980s, Skinner began to be named as a defendant in a number of lawsuits alleging exposure to asbestos by merchant marines. None of these claims has ever resulted in a judgment against Skinner. Because these claims fell under admiralty jurisdiction, they were originally brought in the Northern District of Ohio in a special docket entitled MARDOC. In 1991, these MARDOC claims were transferred to the Eastern District of Pennsylvania. In 1996, the Court administratively dismissed all MARDOC claims, providing that these cases could be reinstated if claimants could show an asbestos-related compensable injury and probative evidence of exposure to the defendant's products. In 2003, the Court

5

clarified that the administrative dismissals were "not intended to provide a basis for excluding the MARDOC claimants from participating in settlement programs or prepackaged bankruptcy programs of a like nature or purpose." *In re Asbestos Products Liability Litigation (No. VI)*, Order Granting Relief to MARDOC Claimants with Regard to Combustion Engineering, Inc., Civil Action No. 2 MDL 875 (E.D. Pa. Feb. 19, 2003).

After being bought and sold a number of times, Skinner was eventually purchased by American Capital Equipment ("ACE") in 1998. On April 16, 2001, Skinner and ACE ("Debtors") filed voluntary Chapter 11 bankruptcy petitions, citing the financial underperformance of Skinner and a slowdown in the automotive industry. Debtors' disclosure made no mention of the outstanding asbestos claims against Skinner. At the time of filing, Skinner had approximately 29,000 asbestos claims pending against it. It had also purchased approximately $146,000,000 worth of insurance coverage for these claims. Most of these policies, which are Debtors' only significant assets, were issued by the appellants in the present case ("Appellants").

Debtors have proposed a series of different plans for reorganization, none of which have yet been confirmed. The most recent plan proposes, among other things, the creation of a trust designed to pay the asbestos claimants in accordance with particular matrices and mechanisms similar to those approved in other asbestos-related bankruptcies. Under this system, each asbestos claim would be audited under the oversight of the Bankruptcy Court, resulting in payments based on the severity of the

6

claimant's illness. As part of the plan, claimants who chose to "opt-in" would also be charged a twenty-percent "surcharge" on any recovery which would be earmarked to pay non-asbestos creditors. Claimants could also choose to "opt-out" and simply maintain their existing action in the District Court. The trust would be funded primarily by the proceeds from Skinner's insurance policies. Debtors alleged that such a plan would allow them to satisfy the claims of the greatest number of creditors. Skinner's unsecured creditors and asbestos claimants voted in support of this plan. Skinner's insurers then initiated an adversary proceeding alleging that such an arrangement violated their contractual rights under the insurance policies.

In June 2005, Appellants filed a motion to dismiss the Chapter 11 petitions, arguing that the case no longer served a legitimate purpose under Chapter 11 and was no longer proceeding in good faith under 28 U.S.C. § 1112(b). Appellants alleged that the plan was not designed to maximize the value of the assets to the creditors, but instead was designed to gain an improper litigation advantage over the insurers by allowing the asbestos claimants to use truncated, court-monitored procedures to access the insurance policies in exchange for claimants' agreement to hand over a portion of their insurance recoveries to other non-asbestos creditors. Following a series of hearings, the Bankruptcy Court ultimately issued an order denying the motion and staying the proceedings pending appeal. Appellants appealed the Bankruptcy Court's order denying the motion to dismiss to the District Court. In a May 11, 2007 order, the District Court affirmed the Bankruptcy

7

Court's order denying Appellants' motion to dismiss, finding that the plan maximized value to creditors and was not filed solely to gain a litigation advantage over creditors, and concluding that the Bankruptcy Court did not abuse its discretion in declining to dismiss Debtors' Chapter 11 case for a lack of good faith. This timely appeal followed.

## II.

The District Court exercised jurisdiction over the appeal of the Bankruptcy Court's denial of Appellants' motion dismiss under 28 U.S.C. § 158(a)(1). We have jurisdiction over this consolidated appeal pursuant to *id.* §§ 158(d)(1) and 1291.[1] In assessing whether the good faith requirement of 11 U.S.C. § 1112(b) is satisfied, we must conduct a "fact intensive inquiry" to determine where a "petition falls along the spectrum ranging from the clearly acceptable to the patently abusive." *In re Integrated Telecom Express, Inc.*, 384 F.3d 108, 118 (3d Cir. 2004) (internal citations and quotation marks omitted). "We therefore review for abuse of discretion the Bankruptcy Court's refusal to dismiss a Chapter 11 petition for want of good faith." *Id.* We will find an abuse of discretion where the decision "rests upon a clearly erroneous finding of fact, an errant conclusion of

---

[1]Appellees challenged jurisdiction on the basis that the Bankruptcy Court's order was not a "final order" as required under 28 U.S.C. § 158(a). However, we are bound in this instance by our decision in *In re Brown*, where we stated that "an order denying a motion to dismiss a Chapter 11 proceeding is a final order within 29 U.S.C. § 158(a)." 916 F.2d 120, 124 (3d Cir. 1990). In addition, we agree that Appellants had standing to appeal the denial of their motion to dismiss.

law, or an improper application of law to fact." *In re SGL Carbon Corp.*, 200 F.3d 154,

159 (3d Cir. 1999) (internal citations and quotations omitted).

III.

As we explained in *SGL Carbon*, "Chapter 11 bankruptcy petitions are subject to

dismissal under 11 U.S.C. § 1112(b)" in the absence of good faith. 200 F.3d at 160-62.[2]

Of particular relevance to the question of good faith is whether the petition serves a "valid

bankruptcy purpose." *Integrated Telecom*, 384 F.3d at 120. As the Supreme Court has

explained, the two main functions of the bankruptcy law are (1) "preserving going

concerns" and (2) "maximizing property available to satisfy creditors." *Id.* at 119

(quoting *Bank of Am. Nat'l Trust & Sav. Ass'n v. 203 N. LaSalle St. P'ship*, 526 U.S. 434,

453 (1999)). If neither of these purposes can be demonstrated, the petition will be

dismissed. *Id.* In addition to serving a valid bankruptcy purpose, we also consider

"whether the petition is filed merely to obtain a tactical litigation advantage." *Id.* at 120;

*SGL Carbon*, 200 F.3d at 165. If this is the sole purpose of the bankruptcy petition, the

---

[2] 11 U.S.C. § 1112(b) provides that:

> on request of a party in interest, and after notice and a hearing, absent
> unusual circumstances specifically identified by the court that establish that
> the requested conversion or dismissal is not in the best interests of creditors
> and the estate, the court shall convert a case under this chapter to a case
> under chapter 7 or dismiss a case under this chapter, whichever is in the
> best interests of creditors and the estate, if the movant establishes cause.

petition is considered to have fallen outside the legitimate scope of the bankruptcy laws.
*Id.* at 164.

Appellants argue that the District Court erred when it concluded that the Bankruptcy Court did not abuse its discretion in declining to dismiss Debtors' Chapter 11 case for a lack of good faith. Appellants first assert that Debtors' Chapter 11 case does not serve a valid bankruptcy purpose because it does not seek to preserve a going concern or maximize available property to satisfy creditors. Debtors concede that Skinner no longer has any going concern value, but contend that their case still serves a valid bankruptcy purpose because it is nonetheless intended to maximize the value of the remaining assets to satisfy creditors. Although Appellants' argument implies that both factors must be present, we recognized in *Integrated Telecom* that the lack of "going concern value" is but one factor to consider in the good faith analysis: "As the Bankruptcy Court recognized, Integrated is unquestionably 'out of business,' and therefore has no going concern value to preserve in Chapter 11 through reorganization or liquidation under the Bankruptcy Code. The question therefore becomes whether Integrated's petition might reasonably have "maximiz[ed] the value of the bankruptcy estate." 384 F.3d at 120. As the District Court explained, while Appellants make a number of arguments that Debtors' plan does not maximize the value of the estate, what these arguments actually take issue with is "how the value was maximized." What is clear is that under Debtors' plan, both the asbestos claimants and the unsecured creditors

10

will be able to share in the assets of the estate – the asbestos claimants through the Court-administered claim assessment process, funded by the insurance policies, and the unsecured creditors through the surcharge. Outside of bankruptcy the asbestos creditors would have to pursue their claims through the court system and the unsecured creditors would not recover anything. On this basis alone, Debtors have satisfied their burden to show that their Chapter 11 case seeks to maximize the value of the bankruptcy estate for the benefit of the creditors.

Appellants also argue that Debtors' Chapter 11 case is proceeding in bad faith because it now exists solely as a means for obtaining a tactical litigation advantage. However, Debtors have clearly stated that the plan was not intended to have any effect on the insurance contracts or on the pending adversary proceeding regarding insurance coverage. Appellants have not directed us to any clear evidence that the plan was intended to confer, or would result in, a particular litigation advantage to Debtors, over and above the advantages that a typical debtor may properly obtain by availing himself of the bankruptcy system. In both cases upon which Appellants rely, the debtors were not financially distressed and both admitted that they sought bankruptcy protection to gain a litigation advantage over creditors. *See Integrated Telecom*, 384 F.3d at 129 (debtor admitted "in a smoking gun resolution approved by the Board" that petition sought to force a creditor to settle); *SGL Carbon*, 200 F.3d at 158 (debtor's executives admitted in a conference call that they intended to use bankruptcy protection as a litigation tactic to

11

combat the claims of the antitrust creditors).  As distinct from those cases, this case was brought by legitimately distressed entities, long before Appellants initiated any litigation. Moreover, Debtors' creditors agreed with the proposed plan.  On the basis of the record before us, we cannot conclude that Debtors' Chapter 11 case now exists solely to gain a tactical litigation advantage and not, as Debtors argue, for the legitimate bankruptcy purpose of maximizing the value of assets available to the creditors.  Therefore, Debtors have not violated the good faith requirement of 28 U.S.C. § 1112(b).

IV.

For the foregoing reasons, we will affirm the order of the District Court.

*In re American Capital Equipment, LLC,* Nos. 07-2546, -2746

*JORDAN, Circuit Judge*, *concurring in the judgment*.

_____

I concur in the judgment, though I believe we have no sound basis for exercising jurisdiction in this case.  Our precedent in *In re Brown*, 916 F.2d 120 (3d Cir. 1990)

constrains us to say that we have appellate jurisdiction under 28 U.S.C. § 158(d) (2000),[3]

but we should revisit that precedent.  I recognize that the concept of finality is relaxed in

the bankruptcy context, but to call an order denying a motion to dismiss "final" seems to

me to go beyond relaxation and all the way to demolition of the principle of finality.  I

agree instead with the majority of the courts of appeals to have considered this issue and

would hold that the denial of a motion to dismiss a bankruptcy case is not a final order

within the meaning of § 158.  Accordingly, were we not constrained by *Brown*, I would

dismiss.[4]

I.

Although district courts have jurisdiction under 28 U.S.C. § 158 (2000) over both

final and interlocutory orders of the bankruptcy courts, we have jurisdiction only over

final orders.  Subsection (a) of § 158, which governs appeals from the bankruptcy courts

to the district courts, provides:

> (a) The district courts of the United States shall have
>
> jurisdiction to hear appeals

---

[3]Section 158(d) of Title 28 was amended in 2005, after this case was filed.  *See infra* note 3.

[4]This Court does have discretion to permit an interlocutory appeal from a district court under 28 U.S.C. § 1292(b).  *Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 254 (1992).  But § 1292(b) does not require us to entertain interlocutory appeals and I would decline to exercise discretion to permit such an appeal in this case.  Accordingly, I focus here on the question of whether we are required under 28 U.S.C. § 158(d) to assume jurisdiction over this appeal.

(1) from final judgments, orders, and decrees;

... and

(3) with leave of the court, from other

interlocutory orders and decrees;

and, with leave of the court, from interlocutory orders and

decrees, of bankruptcy judges entered in cases and

proceedings referred to the bankruptcy judges under [28

U.S.C. § 157]. ...

28 U.S.C. § 158(a) (2000).  Subsequent appeals from the district court to this Court are

governed by subsection (d), which grants us jurisdiction over only "final decisions,

judgments, orders, and decrees entered under subsection[] (a) ... ."[5]  *Id.* at § 158(d).  Thus,

---

[5]The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 amended § 158(d) to provide that, under certain circumstances, courts of appeals may grant litigants leave to appeal from orders of the bankruptcy court–including interlocutory orders–if the bankruptcy court, district court, or bankruptcy appellate panel involved, or all the parties to the appeal, certify that (1) the order "involves a question of law as to which there is no controlling decision" or "involves a matter of public importance"; (2) the order "involves a question of law requiring resolution of conflicting decisions"; or (3) an immediate appeal from the order "may materially advance the progress of the case." 28 U.S.C. § 158(d)(2)(A) (2006).  Former subsection (d) was redesignated as subsection (d)(1).

The amended § 158(d) is not applicable in this case since this case was filed in 2001, prior to the effective date of the amendment.  Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, § 1501, 119 Stat. 23, 216 (2005). Unless otherwise specified, any reference herein to 28 U.S.C. § 158 is to the version of the statute that existed when this case was filed in 2001.

while the district courts have jurisdiction to hear interlocutory appeals under subsection (a), subsection (d) gives us jurisdiction only over appeals from final orders. *In re Jeannette Corp.*, 832 F.2d 43, 45 (3d Cir. 1987).

As a result, whether we have jurisdiction in this case under § 158(d) turns on whether a bankruptcy court's denial of a motion to dismiss a Chapter 11 case for bad faith is properly characterized as a final order or an interlocutory order. If the Bankruptcy Court's denial of the Appellants' motion to dismiss in this case is a final order, the District Court was required to assume jurisdiction under § 158(a) and its affirmance constitutes a final order, giving us jurisdiction under § 158(d). However, if the Bankruptcy Court's order is interlocutory, the District Court's affirmance is interlocutory and we lack jurisdiction under § 158(d). *See Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 252 (1992) (referring to an order of the district court affirming an interlocutory order of the bankruptcy court as an interlocutory order of the district court); *Jeannette*, 832 F.2d at 45-46 (holding that we lack jurisdiction over a district court's affirmance of an interlocutory order of the bankruptcy court).[6]

---

[6]In *Jeannette*, we stated that "the language of § 158(d) does not permit this court to review the district court's disposition of an appeal from a purely interlocutory order of the bankruptcy judge." 832 F.2d at 45. While that is certainly true when the district court affirms an interlocutory order of the bankruptcy court, which was the situation in that case, there may be some circumstances in which a district court's reversal of an interlocutory order of the bankruptcy court may be final for purposes of § 158(d). For example, if a district court were to reverse a bankruptcy court's denial of a motion to dismiss, the district court's order would be final, and thus reviewable in this Court, because the result of the district court's order would be dismissal of that case. *See In re*

15

II.

In *In re Brown*, 916 F.2d 120, 124 (3d Cir. 1990), we held that an order of a bankruptcy court denying a motion to dismiss a Chapter 11 case for bad faith is a final order for purposes of § 158. I believe our decision in *Brown* should be reconsidered. Although it is well settled that the concept of finality is relaxed in the bankruptcy context, the justification for relaxing the finality rule in bankruptcy cases does not support treating the denial of a motion to dismiss as a final order.

Outside of the bankruptcy context, an order is generally considered final and appealable only if it "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Catlin v. United States*, 324 U.S. 229, 233 (1945). The strict rule of finality is relaxed in bankruptcy cases, however, because a single bankruptcy case can encompass a number of "functionally distinct cases." *In re Lopez*, 116 F.3d 1191, 1193 (7th Cir. 1997). Accordingly, an order is considered final in a bankruptcy case when it finally resolves a particular adversary proceeding or resolves the status of a particular claim against the estate. *See id.*; *In re Saco Local Dev. Corp.*, 711 F.2d 441,

*Cash Currency Exch., Inc.*, 762 F.2d 542, 545-46 n.3 (7th Cir. 1985) ("In some instances, the action taken by the district court may transform an interlocutory order of the bankruptcy court into a final order for the purpose of appellate review by this court. An obvious example would be an order by the bankruptcy court denying a motion to dismiss the proceedings for lack of jurisdiction. If on appeal the district court determined that the bankruptcy court lacked jurisdiction and reversed this order, the decision of the district court would be a final appealable order."). Accordingly, our statement in *Jeannette* that we only have jurisdiction when the bankruptcy court's order is final will hold true when the district court affirms, but it may not always hold true when the district court reverses.

16

445-46 (1st Cir. 1983) (Breyer, J.) ("[A] 'final judgment, order, or decree' ... includes an order that conclusively determines a separable dispute over a creditor's claim or priority."). In other words, "the same concepts of finality apply in bankruptcy as in any other case, but they are applied to the discrete controversies within the administration of the estate; the separate dispute being assessed must have been finally resolved and leave nothing more for the bankruptcy court to do." *In re Donovan*, 532 F.3d 1134, 1137 (11th Cir. 2008) (quotation marks omitted); *see also* 1 *Collier on Bankruptcy* ¶ 5:07[1][b] (Lawrence P. King ed., 15th ed. rev. 2008) ("[E]ach adversary proceeding or contested matter is a discrete unit and ..., once that unit is defined, ordinary concepts of finality apply.").

Thus, it may be more helpful to think of the principle of finality as applying in a specialized rather than a "relaxed" way in bankruptcy, and the rationale for that special application does not provide a basis for treating the denial of a motion to dismiss a bankruptcy case as a final order. Unlike an order resolving all of the issues related to a discrete claim or proceeding within a bankruptcy case, the denial of a motion to dismiss a bankruptcy case does not finally resolve anything. It does not resolve a discrete claim or proceeding within the case and it certainly does not resolve the case as a whole. Instead, the denial of a motion to dismiss a bankruptcy case means the same thing it does in any other kind of case: the case goes forward. Accordingly, most of the courts of appeals to consider the issue have concluded that the denial of a motion to dismiss a bankruptcy case

17

is not final. *See Donovan*, 532 F.3d at 1137 ("[T]he bankruptcy court's order denying [the appellant's] motion to dismiss the Chapter 7 case is not a final order."); *In re Jartran, Inc.*, 886 F.2d 859, 863-64 (7th Cir. 1989) ("The bankruptcy court's denial of [the appellant's] motion to dismiss is ... clearly not appealable as a final order. ... [T]his is not a case that falls within the 'twilight zone' of finality; it rests ... clearly outside and beyond the appropriate boundary."); *In re Phillips*, 844 F.2d 230, 235-36 (5th Cir. 1988) ("While the law on finality of bankruptcy orders, in the past, often has turned on difficult and fine distinctions, ... today, especially in the instant case, the applicable law is fairly clear. ... [A]n order [denying a motion to dismiss] allows the bankruptcy proceedings to continue. It thus is a 'preliminary step in some phase of the bankruptcy proceeding,' and does not 'directly affect' the disposition of the estate's assets. We therefore conclude that the bankruptcy order here was non-final." (quotation marks omitted)); *In re 405 N. Bedford Dr. Corp.*, 778 F.2d 1374, 1379 (9th Cir. 1985) ("[T]he denial of the motion to dismiss [the Chapter 11 petition] for bad faith filing is not a final order ..., and we lack jurisdiction over this portion of the [appellants'] appeal."); *In re Comm. of Asbestos-Related Litigants*, 749 F.2d 3, 4-5 (2nd Cir. 1984) (holding that the denial of a motion to dismiss a Chapter 11 case for bad faith is interlocutory).[7] Because general concepts of

_____

[7]Aside from the Third Circuit, the only circuit to treat the denial of a motion to dismiss a bankruptcy case as a final order is the Eighth Circuit, *see In re Koch*, 109 F.3d 1285, 1287-88 (8th Cir. 1997), which cited our decision in *In re Christian,* 804 F.2d 46 (3d Cir. 1986). Our decision in *Brown* also relied on *Christian*. For reasons explained in Part III, *infra*, I believe that our decision in *Christian* was misguided.

finality support treating the denial of a motion to dismiss as non-final, I agree with those circuits and believe that *Brown* should be overruled.

## III.

Not only does *Brown* put us in the minority on this issue, the holding in the case cannot be justified by reason or by the precedent on which it relied. In *Brown*, we stated that we were constrained to reach our result by an earlier decision, *In re Christian*, 804 F.2d 46 (3d Cir. 1986), in which we assumed jurisdiction under § 158(d) over an appeal from a district court order affirming a bankruptcy court's denial of a motion to dismiss a Chapter 7 petition.[8] *Brown*, 916 F.2d at 124; *Christian*, 804 F.2d at 48. *Christian*, in turn, relied on three earlier cases: *In re Marin Motor Oil, Inc.*, 689 F.2d 445 (3d Cir. 1982); *In re Amatex Corp.*, 755 F.2d 1034 (3d Cir. 1985); and *In re Comer*, 716 F.2d 168 (3d Cir. 1983). *Christian*, 804 F.2d at 47-48.

Importantly, however, none of the three cases cited in *Christian* support the proposition that the denial of a motion to dismiss a bankruptcy case is a final order. In *Marin Motor Oil*, the bankruptcy court order at issue was the denial of a motion to intervene, which, unlike the denial of a motion to dismiss, is considered to be a final order

---

[8]We also stated in *Brown* that we were constrained by *In re Taylor*, 913 F.2d 102 (3d Cir. 1990), in which we assumed jurisdiction over an appeal from a district court order affirming a bankruptcy court's denial of a motion to dismiss a Chapter 11 case. *Brown*, 916 F.2d at 124; *Taylor*, 913 F.2d at 104. However, *Taylor* simply relied on *Christian*. *Taylor*, 913 F.2d at 104 ("The order refusing to dismiss the bankruptcy petition is ... appealable, *In the Matter of Christian*, 804 F.2d 46 (3rd Cir.1986).").

even outside of the bankruptcy context.[9] *See, e.g., Dev. Fin. Corp. v. Alpha Hous. & Health Care, Inc.*, 54 F.3d 156, 158 (3d Cir. 1995) ("[T]he denial of a motion to intervene as of right is a final, appealable order."). Similarly, in *Amatex*, we concluded that we had jurisdiction over an appeal from a district court order denying a motion to appoint a guardian ad litem to represent potential future asbestos claimants, reasoning that the order was tantamount to a denial of a motion to intervene. *Amatex*, 755 F.2d at 1040-41. Thus, neither *Marin Motor Oil* nor *Amatex* is a precedent for treating as final the denial of a motion to dismiss.

Nor does our decision in *Comer* provide support for our holding in *Christian*. In *Comer*, we considered whether we had jurisdiction to review the district court's reversal of a bankruptcy court's order denying a motion to lift the automatic stay to permit a property foreclosure in state court. *Comer*, 716 F.2d 171-74. We held that the district court's order directing the bankruptcy court to lift the stay was a final order because it subjected the property to foreclosure and, thus, ended a particular controversy in the bankruptcy case. *Id*. at 172. But unlike the district court's order to lift the automatic stay

---

[9]The real issue in *Marin Motor Oil* was whether the district court's order, which reversed the bankruptcy court's order denying a motion to intervene, was final. We held that it was, noting that the bankruptcy court's order was "indisputably" final and that "the principal rationales for narrowly construing finality ... have less applicability when one appellate court is asked to review what is in effect a lower appellate court." *Id*. at 448-49. Incidentally, our decision to assume jurisdiction in *Marin Motor Oil* has also been roundly criticized, *see Lopez*, 116 F.3d at 1192-94 (collecting cases and rejecting the Third Circuit's approach), but there is no occasion to revisit that issue here.

in *Comer*, a district court's affirmance of a bankruptcy court's order denying a motion to dismiss a bankruptcy case does not end a discrete dispute within the bankruptcy case. Again, it does not end anything; it keeps the bankruptcy case alive.

Aside from our citations to *Marin Motor Oil*, *Amatex*, and *Comer*, the only reasoning given for our holding in *Christian* was the view that waiting until the entire bankruptcy proceeding was completed before the court of appeals could review the denial of a motion to dismiss would not be "desirable or practical." *Christian*, 804 F.2d at 48. As to whether it would be desirable, that is eminently debatable. While immediate review may turn out to be efficient in a particular case, that will only be true if we reverse and hold that the case must be dismissed. In the long run, immediate review is likely to be inefficient because improperly classifying orders as final instead of interlocutory encourages parties to file multiple appeals to preserve their arguments for review. *See* Fed. R. Bank. P. 8002(a); Fed. R. App. P. 4; *Cf. In re Market Square Inn, Inc.*, 978 F.2d 116, 122 (3d Cir. 1992) (Stapleton, J., dissenting) ("My concern is that if the two orders underlying this appeal are determined to be final, there will be no jurisdictional limits imposed by section 158(d) in the Third Circuit, and a careful lawyer for the losing party will be constrained to file an appeal whenever an order of a bankruptcy court decides some, but less than all, of the issues on which an application for relief depends."). More to the point, though, the desirability of an outcome is no basis for asserting jurisdiction when no jurisdiction exists.

21

As to the practicality of applying the finality rule under circumstances like these, I see no reason why a litigant in a bankruptcy case cannot obtain meaningful review of the denial of a motion to dismiss a bankruptcy case for bad faith after the bankruptcy case has reached final judgment.[10]  But a disappointed litigant need not even wait that long because, under the statutory scheme, bankruptcy cases do not need to be fully and finally litigated before the issue of whether the debtor filed in bad faith may be reviewed. Section 158(a) provides for district court review of interlocutory orders of the bankruptcy court with leave of court.  Thus, if a bankruptcy court order denying a motion to dismiss is "so beyond the bounds of propriety as to constitute an abuse of discretion[, that order] may be subject to adequate control under the discretionary power section 158(a) gives a district court to hear and decide appeals from interlocutory orders of bankruptcy courts." *In re BH & P Inc.*, 949 F.2d 1300, 1320 n.3 (3d Cir. 1991) (Hutchinson, J., concurring and dissenting).  Moreover, this court has discretion to hear appeals from interlocutory orders of the district courts under 28 U.S.C. § 1292(b) and, under certain circumstances, of the bankruptcy courts under 28 U.S.C. § 158(d)(2) (2006) (for cases filed after the

---

[10]For example, in *In re Integrated Telecom Express, Inc.*, 384 F.3d 108, 129-130 (3d Cir. 2004), we concluded, after a bankruptcy plan had been confirmed, that the bankruptcy court should have granted an earlier motion to dismiss the Chapter 11 petition for lack of good faith.  Although, it appears in that case that separate appeals were taken from the order denying the motion to dismiss and from the order confirming the plan, *see id.* at 116-18, our decision in that case demonstrates that meaningful appellate review can still be had in the context of a confirmed bankruptcy plan.

22

effective date of the amendment to § 158) and, thus, can grant permission to appeal in cases where the bad faith of the debtor is clear.[11]

In sum, our holding in *Brown*–that the denial of a motion to dismiss a bankruptcy case is a final order–may have been compelled by our decision in *Christian*, but *Christian* is not supported by the precedent on which it relied. Nor do I agree that it is desirable or practical to treat the denial of a motion to dismiss as final. *Christian*, 804 F.2d at 48. I would therefore rely on general principles of finality, as widely adopted even in the bankruptcy context, and treat the denial of a motion to dismiss a bankruptcy case as an interlocutory order, not a final one.

## IV.

For the reasons set forth above, our decision in *Brown* should be reconsidered. But I agree with the majority that we are constrained by our precedent, and I therefore concur in the judgment.

---

[11]While 28 U.S.C. § 1292(b) and 28 U.S.C. § 158(d)(2) (2006) grant the courts of appeals jurisdiction to hear interlocutory appeals, it remains extremely important for us to distinguish between interlocutory orders and final orders. For one thing, unlike § 1292(b), § 158(d)(1) (formerly, § 158(d)) permits appeals from final orders of the district courts as of right. Accordingly, we must assume jurisdiction over an appeal from a final order under § 158(d)(1) regardless of whether we would otherwise exercise our discretion not to entertain the appeal and regardless of whether the district court certified the order for appeal. As a result, properly classifying orders as final or interlocutory will enable us to distinguish between those appeals from the district court that we must hear, those that we have discretion to hear, and those over which we lack jurisdiction. Furthermore, as already noted, improperly classifying interlocutory orders as final not only forces district courts to entertain interlocutory appeals, it perversely encourages parties to file multiple appeals in order to preserve their arguments for review.